| | | |
|---|---|---|
| LAWRENCE M. EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-2179-AGF |
| | ) | |
| ELLIS MCSWAIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Michael White's motion to dismiss and defendants Robert Gould and Les Semar's motions for judgment on the pleadings. The motions are fully briefed and ready for decision. For the following reasons, the Court will grant defendant White's motion to dismiss and defendant Gould's motion for judgment on the pleadings. The Court will deny defendant Semar's motion for judgment on the pleadings.

### I.    Background

Plaintiff has been incarcerated in the Missouri state prison system since 1995. Because he is a sex offender, he is required by Missouri statute to participate in the Missouri Sex Offender Program ("MOSOP") before he can be eligible for parole or conditional release. Plaintiff had a good time eligibility ("GTE") release date of February 23, 2017, and has a conditional release date ("CRD") of August 23, 2019. If he were to serve his full sentence, without regard to good time credits and conditional release, he would not be eligible for release until 2024.

MOSOP is conducted in three phases, all of which need to be completed for eligibility for early release. According to Missouri Department of Corrections ("MODOC") policy, an offender

should typically be placed in MOSOP within fourteen to sixteen months of the "earliest presumptive release date," which plaintiff alleges is an offender's GTE date, not his CRD.

Plaintiff started Phase I of MOSOP on February 11, 2016, and completed it in March 2016. He alleges he was to begin Phase II within fourteen to sixteen months of his GTE release date of February 23, 2017. Instead, he states he was retaliated against by FCC and MOSOP officials, and these officials purposefully miscalculated his entry into Phase II to begin within fourteen to sixteen months of his CRD on August 23, 2019, which is two and a half years later than his GTE date. Plaintiff did not start Phase II of MOSOP until January 29, 2018—nearly two years after his completion of Phase I, and nearly one year after his GTE release date. Because of this retaliation, plaintiff states that he will be spending an additional two and a half years in prison. He seeks compensatory damages in the amount of $150,000 and punitive damages in the amount of $250,000.

## II. Procedural History

### A. Plaintiff's Prior Missouri State Court Case

This Court is not the first to encounter plaintiff's issue with MOSOP and his potential early release date. On June 17, 2016, plaintiff filed a petition in Cole County Circuit Court titled "Declaratory Judgment & Injunctive Relief." *See Edwards v. McSwain, et al.*, Case No. 16-AC-CC00262 (19th Circuit, Cole County) (filed June 17, 2016) ("prior state court case"). Plaintiff later summarized his thirty-page petition as follows:

This complaint is being filed against MoSop officials who acted in concert with Modoc officials to prevent the Petitioner from participating in Phase II, so not to be considered by Probation & Parole for his Good Time Eligibility Date of 2/23/17, and postponed his participation altogether even though Petitioner had been placed into Phase I 14-16 months of his earliest possible release date of 2/23/2017 and complete[d] Phase I, sometime around 3/2016. Petitioner was informed by MoSop officials named in complaint that he now must wait until he is 14-16 months from his Conditional Release Date of 8/23/2019, which is almost 2 ½ years from now.

. . .

Respondents [including defendants Michael White and Robert Gould] knew that Petitioner had been tracked by his GTE date, and had Petitioner had been tracked by his GTE date, and had Petitioner issued a notice to start Phase I on February 11, 2016 only to postpone his enrollment in Phase II, to discriminate against him for exercising his Constitutional rights against Modoc FUM Wendy Dashner and Modoc—Former Sgt. James Ford's harassment/retaliation of Petitioner . . . to effectively "chill" his First Amendment right to seek civil/judicial redress which upset these Modoc/MOSOP officials, and why the sudden deactivation and prevention in Phase II . . . .

Pet.'s Opp'n to Defs.' Mot. to Dismiss at 1-3, Case No. 16AC-CC00262 (Cole Cty. Cir. Ct., filed Oct. 11, 2016).

The Circuit Court of Cole County granted defendants White and Gould's motion for judgment on the pleadings.[1] The court found, as a matter of law, that plaintiff had no liberty interest in completing MOSOP by any certain date. Plaintiff appealed this determination, and the Missouri Court of Appeals for the Western District of Missouri affirmed.

B.     Plaintiff's Prior Federal Case

Plaintiff has also brought First Amendment retaliation claims against defendants White, Gould, and Semar in a prior case in this Court, *Edwards v, Villmer, et al.*, Case No. 4:16-CV-1077-RLW (E.D. Mo. filed June 27, 2016) ("prior federal case"). Plaintiff's case as to defendants White, Gould, and Semar was dismissed without prejudice as conclusory on preservice

---

[1] The motion for judgement on the pleadings was filed by defendants Ellis McSwain, Michael White, and any other MDOC employees named in the petition. Defendant Robert Gould filed a separate motion for judgment on the pleadings, in which he joined the other defendants.

initial review under 28 U.S.C. § 1915(e). *See id.* at ECF No. 9. These defendants were never served. More than a year later, the Court entered summary judgment in favor of the remaining defendants, Wendy Dashner and James Ford (correctional officers at Farmington Correctional Center ("FCC")), on plaintiff's claims of First Amendment retaliation. Plaintiff filed two extensions of time to file a notice of appeal, but ultimately did not file his notice of appeal.

## III.  Legal Standards

### A.  Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a civil rights complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Gregory v. Dillards, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotations and citation omitted). "A plaintiff must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims rather than facts that are merely consistent with such a right." *Id.* (quotations and citation omitted). "While a plaintiff need not set forth detailed factual allegations or specific facts that describe the evidence to be presented, the complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Id.* (quotations and citations omitted).

"The Court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010). "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'" *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831 (8th Cir. 2003)).[2]

---

[2] Here, plaintiff has attached to his amended complaint fifty-five pages of documents, including

B.      Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is treated under the same legal standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  *See Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).   "Well-pleaded facts, not legal theories or conclusions, determine [the] adequacy of [t]he complaint."  *Id.* (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003)).

## IV.     Discussion

In their motion to dismiss and motions for judgment on the pleadings, defendants argue that plaintiff's allegations have been previously adjudicated in his prior state court and federal cases, and therefore this second federal case is barred by the doctrine of res judicata.   Even if res judicata does not bar this action, defendants state that plaintiff cannot make out a prima facie case of First Amendment retaliation, and his case should be dismissed.

A.      Res Judicata

The Eighth Circuit has discussed the intersectionality of issue preclusion and claim preclusion.   "Res judicata incorporates the concepts of both issue preclusion and claim preclusion.  Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided."  *Sandy Lake Band of Miss. Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) (internal citations and quotations omitted).   Issue preclusion has five elements:

---

seven prison grievances and documents related to these grievances.  In addition, the Court has considered the public record of plaintiff's state court case, *Edwards v. McSwain, et al.*, Case No. 16-AC-CC00262 (19th Cir., Cole Cty.) (filed June 17, 2016), accessed through the Missouri State Courts docketing system, Missouri Case.net.   The Court has also considered the public record of plaintiff's prior federal case, *Edwards v. Villmer, et al.*, Case No. 4:16-CV-1077-RLW (E.D. Mo., filed June 27, 2016).

(1)     the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit;

(2)     the issue sought to be precluded must be the same as the issue involved in the prior action;

(3)     the issue sought to be precluded must have been actually litigated in the prior action;

(4)     the issue sought to be precluded must have been determined by a valid and final judgment; and

(5)     the determination in the prior action must have been essential to the prior judgment.

*Id.* at 1102-1103.

The burden of persuasion to establish these elements is on the party seeking preclusion. *See* 18 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d § 132.03[2][g] (3d ed. 2018) ("MOORE'S FEDERAL PRACTICE").   If there is ambiguity and a court cannot ascertain what was litigated and decided, issue preclusion cannot operate.   *Id.*

Defendants White and Gould point to the prior state court case as having res judicata effect, precluding this federal case.   Defendant Semar, however, who was not a party to the state court case, points to plaintiff's prior federal case as having res judicata effect, precluding this second federal case.   The Court will address the five elements of issue preclusion as to defendants White and Gould separate from defendant Semar.

### 1.     Defendants Michael White And Robert Gould

#### a.     Parties Sought To Be Precluded in Second Suit Must Have Been Party to Original Suit

There is no disagreement that defendants White and Gould were involved in plaintiff's prior state court case.   The question is whether the issues litigated and decided in the state court case are the same as the issues presented in this case.

### b. Issue Precluded Must Be the Same as the Issue Involved in Prior Action

Edwards raised the same issues in all three suits. In his prior state court case, his prior federal case, and here, plaintiff alleges that in retaliation for his filing IRRs and grievances against FCC and MOSOP officials, defendants prevented his timely entry into MOSOP Phase I, and his timely continuation into MOSOP Phases II and III.

All plaintiff's cases have been filed pro se, and he has not set out his claim of retaliation as a separate cause of action as counsel might. The substance of all three filings, however, clearly states allegations of retaliation for filing grievances against FCC and MOSOP officials. *See Edwards v. McSwain*, No. 16AC-CC00262, Pet. (Cole Cty. Cir. Ct. filed Jun. 17, 2016) (petition "based on . . . failure to intervene on MOSOP officials decision-making authority to intentionally and maliciously with culpable state of mind, bent on retaliation, to prevent petitioner from completing Phase II MOSOP, and being considered for 'Good-Time' notice"); *Edwards v. Villmer*, No. 4:16-CV-1077-RLW, Compl. (E.D. Mo. filed Aug. 18, 2016) ("The Amended Complaint alleges that Plaintiff was falsely/unlawfully classified as an Alpha (aggressive, predatory, and intimidating), retaliation being the actual motivating factor, for false conduct violations, and unlawful detainments and prevented placement in MOSOP, and after filing grievances.")

### c. Issue Must Have Been Actually Litigated in the Prior Action[3]

Plaintiff litigated in his state court case the violation of his First Amendment rights to be free of retaliation, both in the trial court and in the appellate court. Plaintiff's pro se petition in

---

[3] Under this criteria, this case presents the unique situation of an issue that was *litigated* in the prior cases, but was not *decided* in the prior cases. For now, the Court will address whether plaintiff litigated the issue in his prior cases, and will discuss in criteria five (*see infra*, Part III.A.1.e) whether the prior courts decided the issue.

state court alleged retaliation throughout, starting in the first paragraph of his petition. *See*

*Edwards v. McSwain*, No. 16AC-CC00262, Pet. (Cole Cty. Cir. Ct. filed Jun. 17, 2016)

("[defendants] intentionally and maliciously with culpable state of mind, bent on retaliation to

prevent Petitioner from completing Phase II MOSOP . . . violated his protected liberty interest").

On appeal, Edwards seems to raise his First Amendment retaliation claim in Point I of his

six-point appellate brief:

**POINTS RELIED ON I**

**THE TRIAL JUDGE ERRED IN ENTERING THE JUDGMENT IN FAVOR OF RESPONDENTS . . . BECAUSE TRIAL JUDGE FAILED TO DRAW UP INTERNAL GRIEVANCES AGAINST MOSOP OFFICIALS IN THAT PLAINTIFF HAD THE RIGHT UNDER HIS FIRST AMENDMENT TO PETITION FOR REDRESS FOR WHICH RETALIATORY CONDUCT DOES NOT ITSELF RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION.**

*Edwards v. McSwain, et al.*, No. WD80305, Appellant's Br. On Appeal (Mo. Ct. App. filed Mar.

10, 2017).

       *d.*    *Valid and Final Judgment*

The state court entered a valid and final judgment on the parties' motion for judgment on

the pleadings.  Plaintiff appealed the judgment, and the appellate court also issued a valid and

final judgment.

       *e.*    *Determination in Prior Action Must Have Been Essential to the Prior Judgment[4]*

---

[4] "In discovering what issues were determined by the judgment in a prior action, the court in the second action is free to go beyond the judgment roll, and may examine the pleadings and the evidence in the prior action."  MOORE'S FEDERAL PRACTICE 3d § 132.03[4][i].

Defendants' motion to dismiss this federal case based on the res judicata effect of plaintiff's prior state court case fails on element five—whether the determination in the state court case was essential to the state court judgment.

The doctrine of issue preclusion treats as final only those questions actually and necessarily decided in a prior suit. MOORE'S FEDERAL PRACTICE 3d § 132.03[3][a]. "In order for a determination of fact subsumed in an earlier judgment to be preclusive in a later action, the determination of that issue must have been actually decided, that is, distinctly put in issue and directly determined." *Id.* "The determination of an issue in the prior action is given preclusive effect only with regard to those matters in issue or points controverted, and only if the finding or verdict rests on the determination." *Id.*

The state trial court did not address plaintiff's retaliation claim in its Memorandum, Order, and Judgement dated December 6, 2016. The trial court based its ruling entirely on the fact that plaintiff had no liberty interest in early release from prison, and no liberty interest in being scheduled to complete MOSOP by a particular date. "As a result, even if Missouri prison officials have delayed Edwards's participation in the MOSOP, that delay is not an atypical and significant deprivation that would implicate Edwards's due process rights. Therefore . . . there is no legal theory under which Edwards could prevail." *Edwards v. McSwain*, Case No. 16AC-CC00262, Mem., Order, and J. (Cole Cty. Cir. Ct. filed Dec. 6, 2016).

For its part, the Missouri Court of Appeals found plaintiff's Point I "indecipherable." Plaintiff's Point I was that the trial court erred in entering judgment in favor of defendants because the "trial judge failed to draw upon internal grievances against MOSOP officials in that plaintiff had the right under his First Amendment to petition for redress for which retaliatory conduct does not itself rise to the level of a constitutional violation." In the same paragraph, however, the

appellate court stated "insofar as Edwards is attempting to argue a violation of a civil right on appeal, such a claim is properly brought in an action under 42 U.S.C. § 1983." *Edwards v. McSwain*, No. WD80305, Mem. Suppl. Order Affirming J. Pursuant to R. 84.16(b) (Mo. Ct. App. filed Jun. 27, 2017).

So, while the issue was litigated by plaintiff in the state court case, and not waived, it was not decided. The final word on this issue came from the appellate court, stating that the issue would be properly brought in a § 1983 case. Because the Court cannot find that the state court's prior judgment determined the issue of whether defendants retaliated against plaintiff for filing grievances, the Court cannot give the state court's judgment final preclusive effect foreclosing litigation of the matter in this federal court. The Court will deny defendants White and Gould's motion to dismiss on this point.

### 2. *Defendant Les Semar*

#### (a) *The Parties to the Two Cases Must Be Same*

Defendant Semar relies on plaintiff's prior federal case, to which he was a party, for his claim of res judicata. There is no dispute that defendant Semar was a party to the prior federal case, but his claim of res judicata encounters a problem at element four, whether the prior case ended in a valid and final judgment.

#### (b) *Valid and Final Judgment*

In plaintiff's prior federal case, defendant Semar was dismissed without prejudice on preservice initial review under 28 U.S.C. § 1915(e). This dismissal without prejudice is generally not considered an adjudication on the merits, and therefore, is not entitled to issue preclusive effect. *See* MOORE'S FEDERAL PRACTICE, § 132.03[2][l]. Because defendant Semar cannot

establish that plaintiff's prior federal case ended in a valid and final judgment against Semar, the Court will deny his motion for judgment on the pleadings on the issue of res judicata.

> B.      First Amendment Retaliation

Defendants assert that even if plaintiff's First Amendment retaliation claims are not subject to res judicata effect, they should be dismissed because plaintiff cannot establish a prima facie case. The Court agrees with defendants White and Gould that plaintiff has failed to state a plausible claim of First Amendment retaliation against them. As to defendant Semar, however, the Court, construing plaintiff's amended complaint liberally, finds plaintiff has stated a plausible claim of First Amendment retaliation.

"The right to be free from retaliation for availing one's self of the prison grievance process has been clearly established in this circuit for more than twenty years." *Santiago v. Blair*, 707 F.3d 984, 992 (8th Cir. 2013). To state a prima facie case for First Amendment retaliation, plaintiff must allege that (1) he engaged in protected activity; (2) that defendants, to retaliate for the protected activity, took adverse action against plaintiff that would chill a person of ordinary firmness from engaging in that activity; and (3) that the adverse action was motivated at least in part by the exercise of the protected activity. *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied*, 546 U.S. 860 (2005).

> 1.      *The Protected Activity*

Based on plaintiff's amended complaint, he states he was retaliated against by defendant FCC and MOSOP officials "after he filed several grievances against them." Am. Compl. ¶ VI.2.[5]

-----

[5] In his state court case, plaintiff alleged specifically that his protected activity was notifying Missouri State Senator Jamilah Nasheed's office of an incident in which "Sergeant Ford handcuffed, maced and applied an illegal chokehold on causing [an offender] to go into cardiac arrest." *Edwards v. McSwain*, No. 16AC-CC00262, Pet. (Cole Cty. Cir. Ct., filed Jun. 17, 2016). He states that Sergeant Ford had "strong ties" with defendant Semar, "who personally told me that

Plaintiff has filed at least seven grievances concerning the issues alleged in the complaint, and he attaches these grievances to his complaint: FCC 15-952 (filed Aug. 21, 2015); FCC 15-996 (filed Aug. 26, 2015); FCC 16-480 (filed May 16, 2016); FCC 16-967 (filed May 20, 2016); FCC 16-721 (filed Jul. 25, 2016); ERDC 16-738 (filed Jun. 14, 2016); and FCC 17-44 (filed Jan. 17, 2017).[6] Although these grievances could be the protected activity for which he was retaliated against, the grievances themselves complain about the alleged retaliatory activity—*i.e.*, plaintiff's failure to be placed in, or continue in, MOSOP.

Prior to the filing of this action, plaintiff engaged in a separate investigation into allegations of harassment and unlawful force used by Sergeant Ford at FCC against African-American offenders. In one of his grievances, FCC-16-480, plaintiff alleges he was retaliated against because he angered FCC officers, including defendant Semar, by contacting State Senator Jamilah Nasheed's office and "giving her signature affidavits from other African-American offenders, related to having been issued bogus CDVs, threated and assaulted by Sgt. James Ford, to prove a pattern of civil rights violations, which had him re-investigated and forced into early retirement." It is this alleged retaliation that plaintiff complained of in his state court case.

Plaintiff also alleges in his amended complaint that he was retaliated against by defendant Semar because plaintiff attempted to transfer out of FCC. On August 20, 2015, plaintiff filed grievance FCC 15-952 against defendant Semar, stating "Semar [told plaintiff] he should sign [protective custody] waiver and be able to take MOSOP here, instead of transferring or else it'll

---

MOSOP Director [defendant] Gould was a close friend of his, and if transferred elsewhere he could guarantee that Petitioner would not be placed in MOSOP Phase I and II." *Id.*

[6] Plaintiff filed nineteen grievances at FCC between June 2014 and September 2015; plaintiff filed eight grievances at ERDCC between December 2015 and September 2016. *See* ECF No. 53-1.

count as failure to do MOSOP." On August 26, 2015, plaintiff filed grievance FCC 15-996 against FCC and MOSOP officials. Grievance FCC 15-996 states that plaintiff "felt coerced, lied to and threatened with loss of MOSOP if I accepted a transfer offered me by central office but told I'd be maxed out until 2024."

Plaintiff had attempted to transfer out of FCC because he cooperated in the Cape Girardeau Police Department's investigation of another FCC inmate, Terrance Vance, for the alleged murder of plaintiff's son. Plaintiff states that word of his cooperation spread through FCC, and other inmates were threatening his life. He requested to transfer out of FCC for his safety. In his complaint, plaintiff states that "FUM Semar called plaintiff to [housing unit] 2 pod, told him that he is MOSOP required for Oct/Nov 2015, and if he attempts to transfer he would contact his best friend MOSOP Director Robert Gould and make sure plaintiff serve his maximum sentence of 2024." Am. Compl. § VI.3.

He also alleges Semar retaliated against plaintiff for filing grievances against Semar's coworkers, although plaintiff does not specify which grievances or which coworkers: "FUM Semar threatened plaintiff by telling him it would be in his best interest to dismiss the IRRs he had pending against his two co-workers, and would give plaintiff until that afternoon to rethink his decision." *Id.* at § VI.4. The Court cannot determine, after much review, which IRRs plaintiff had pending against Semar's two co-workers at this time, and cannot determine the two co-workers to which plaintiff refers.

Then on October 1, 2015, plaintiff states defendants Gould and White "made their first attempt to terminate plaintiff from MOSOP by issuing him MOSOP notification [stating he was to

begin MOSOP Phase 1 at FCC on October 1, 2015] fully informed about [plaintiff's] transfer status."[7]  *Id.* at § VI.11; Ex. N.

Based on a thorough review of plaintiff's amended complaint and the attached documentation, plaintiff has engaged in the near-constant filing of IRRs related to his placement in, or his continuation in, the MOSOP program.  Prior to this, plaintiff had been involved in grievances related to Sgt. Ford and his treatment of African-American inmates.  Additionally, plaintiff has participated in the criminal investigation into another offender, Mr. Vance, and requested to transfer out of FCC for his safety.  Plaintiff alleges he was threatened by Semar with loss of his MOSOP eligibility in retaliation for:  (1) filing IRRs against Semar; (2) filing IRRs against two of Semar's coworkers; (3) notifying State Senator Nasheed of issues between Sgt. Ford and African-American inmates, which began an investigation that led to Sgt. Ford's early retirement; and (4) requesting transfer out of FCC for his safety.

> 2.  *The Adverse Action*

>> (a)  *Plaintiff's Prison Transfer and Entry Into MOSOP Phase I*

Plaintiff complaint is difficult to follow, and not logically consistent, but it seems that on September 22, 2015, plaintiff was pending transfer from FCC because of safety concerns, namely safety concerns posed with respect to offender Vance.  He alleges that on September 24, 2015, defendants Gould and White tried "to terminate plaintiff from the MOSOP program" by issuing him a notification that he was to begin MOSOP Phase I on October 1, 2015 at FCC.  Plaintiff alleges defendants White and Gould issued this notification knowing that plaintiff had requested a transfer to different facility.  The beginning date for MOSOP Phase I issued by defendant White

---

[7] The MOSOP notification was signed by defendant White on September 24, 2015, and notifies plaintiff he is to begin MOSOP Phase 1 at FCC on October 1, 2015.  ECF No. 8-1 at 18.

and Gould would have placed plaintiff on track for entering MOSOP Phase I within fourteen to sixteen months of his GTE date, as plaintiff alleges was appropriate.

Plaintiff's attorney contacted the MODOC, and the "MOSOP termination attempt was cancelled" and on October 13, 2015, plaintiff was transferred to Moberly Correctional Center ("MCC"). MCC did not offer MOSOP, and on October 13, 2015, MCC staff immediately submitted plaintiff for transfer to Eastern Reception, Diagnostic and Correctional Center ("ERDCC"). Plaintiff's transfer to ERDCC occurred on December 8, 2015. Plaintiff began MOSOP Phase I at ERDCC on February 11, 2016.

As set forth in *Revels*, a prisoner must demonstrate not only that the prison officials took an adverse action, but that the action "would chill a person of ordinary firmness from continuing in the [protected] activity." 382 F.3d at 876. Plaintiff alleges he was transferred prisons at his request, and his start date for MOSOP Phase I was delayed until he could be placed in a suitable prison with a MOSOP program. He claims this was in retaliation for filing grievances against defendant Semar and his coworkers. Being transferred prisons, at the prisoner's request, for safety considerations is not an adverse action. The transfer from FCC to MCC to ERDCC took approximately two months, which alone would not have caused plaintiff to be tracked off his GTE release date of February 23, 2017. Therefore, the Court cannot find that this alleged adverse action, allegedly caused by defendants White and Gould, would have chilled a person of ordinary firmness from continuing to engage in any protected activity. The Court finds that no reasonable jury could conclude that defendants White and Gould retaliated against plaintiff by notifying him of his start date for MOSOP Phase I at FCC, while plaintiff was pending transfer. For this reason, the Court will grant defendant White's motion to dismiss and defendant Gould's motion for judgment on the pleadings.

##### (b) Delayed Entry Into MOSOP Phase II and Loss of GTE Release Date

Plaintiff also alleges that after his completion of MOSOP Phase I in March 2016, he was not immediately enrolled in MOSOP Phase II. Plaintiff's therapist, Mr. Roberton, had told plaintiff that he would start Phase II in March or April 2016. (Am. Compl. ¶ 17.) Instead, plaintiff had to wait nearly two years—until January 29, 2018—to begin Phase II. Because of plaintiff's delayed entry into MOSOP Phase II, plaintiff lost his GTE release date of February 23, 2017.

Plaintiff alleges this was in retaliation, again, for grievances filed against defendant Semar and his coworkers. "Plaintiff realizes that FUM Semar's threat to have MOSOP Director Gould to make plaintiff serve his maximum sentence of 2024 is actually being carried out since his 2-23-2017 GTE been took [sic]." (Am. Compl. ¶ 27.) The Court finds that plaintiff's alleged delay of nearly two years before his entry into MOSOP Phase II, and the accompanying loss of his GTE release date, could constitute an adverse action that would chill a person of ordinary firmness from filing grievances. The Court finds this allegation of adverse action, taken against plaintiff by defendant Semar, sufficient to state a plausible claim of retaliation for engaging in protected speech.

The Court is not persuaded by defendant Semar's argument that this action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). A judgment in this action would not necessarily imply the invalidity of plaintiff's criminal conviction, continued imprisonment, or sentence. Here, plaintiff is seeking damages for violations of his First Amendment right to file grievances. This question of First Amendment retaliation is analytically distinct from the question of whether plaintiff violated the law in his criminal case.

#### 3. Causation

Finally, plaintiff must allege a sufficient causal connection between his use of the grievance process and defendants' allegedly retaliatory actions. To satisfy the causal connection prong, "the plaintiff must show the official took the adverse action because the plaintiff engaged in the protected speech." *Revels*, 382 F.3d at 876. "The causal connection is generally a jury question, but it can provide a basis for summary judgment when the 'question is so free from doubt as to justify taking it from the jury.'" *Id.* (quoting *Naucke v. City of Park Hills*, 284 F.3d 923, 927-28 (8th Cir. 2002)).

At this stage in the proceeding, where plaintiff's factual allegations are entitled to the assumption of truth and all reasonable inferences are drawn in his favor, the Court finds plaintiff has stated sufficient factual matter against defendant Semar to state a claim to relief that is plausible on its fact. Based on plaintiff's allegations, he was threatened by defendant Semar that if plaintiff did not withdraw his grievances against Semar's coworkers, plaintiff would serve his entire sentence. Plaintiff has established that his entry into MOSOP Phase II was delayed by nearly two years, and claims that this resulted in the loss of his GTE release date. Plaintiff's pleaded factual content allows the Court to draw the reasonable inference that the delay in entry into MOSOP Phase II was caused by defendant Semar's retaliation for plaintiff's filing grievances. Plaintiff's legal conclusions are supported by well-pleaded factual allegations, and the Court finds plaintiff's amended complaint plausibly gives rise to an entitlement to relief against Semar.

C.    Qualified Immunity

In his motion for judgment on the pleadings, defendant Semar claims he is entitled to qualified immunity. Qualified immunity protects government officials from liability under 42 U.S.C. § 1983, but not if their conduct "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Nelson v. Corr. Med. Servs.*, 583 F.3d

522, 527 (8th Cir. 2009) (en banc) (quotation omitted); *see Maness v. Dist. Court*, 495 F.3d 943, 944 (8th Cir. 2007) (analyzing qualified immunity on 28 U.S.C. § 1915(e)(2)(B) review). The tests for whether an officer is entitled to qualified immunity are: (1) whether the facts alleged, taken in the light most favorable to the injured party, show that the officer's conduct violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the deprivation so that a reasonable officer would understand his conduct was unlawful. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

The Court finds that the facts alleged, viewed in the light most favorable to plaintiff, show that defendant Semar retaliated against plaintiff for exercising his First Amendment right to file grievances against Semar and other officials at FCC. Plaintiff's right to be free of First Amendment retaliation was clearly established at the time and a reasonable officer would have understood defendant's conduct was unlawful. Based on the allegations of the complaint, the Court will deny defendant Semar's motion to dismiss on qualified immunity grounds. If, after discovery, defendant seeks to renew his qualified immunity argument, the Court will address the issue on summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Michael White's motion to dismiss is **GRANTED**. [ECF No. 38]

**IT IS FURTHER ORDERED** that defendant Robert Gould's motion for judgment on the pleadings is **GRANTED**. [ECF No. 57]

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to file his memorandum in opposition to defendant Les Semar's motion for judgment on the pleadings is **GRANTED**. [ECF No. 80]

**IT IS FURTHER ORDERED** that defendant Les Semar's motion for judgment on the pleadings is **DENIED**.   [ECF No. 77]

**IT IS FURTHER ORDERED** that plaintiff's motion for injunctive relief and emergency hearing of tapes is **DENIED**.   [ECF No. 25]

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary and permanent injunctive relief is **DENIED as moot** as plaintiff has entered MOSOP Phase II.   [ECF No. 29]

**IT IS FURTHER ORDERED** that plaintiff's motion to conduct discovery is **DENIED without prejudice** to refiling after discovery has commenced.   [ECF No. 67]

**IT IS FURTHER ORDERED** that plaintiff's motions for subpoenas are **DENIED without prejudice** to refiling after discovery has commenced.   [ECF Nos. 68, 69, 70, and 71]

An Order of Partial Dismissal and Order of Partial Judgment will accompany this memorandum and order.

The Court is also entering a separate case management order today.

Dated this 28th day of September, 2018.


_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE