UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LAWRENCE EDWARDS, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 4:17-CV-2179-AGF |
| ELLIS MCSWAIN, et al., | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross motions for summary judgment. ECF Nos. 139 & 145. For the reasons set forth below, the Court will grant Defendant's motion and deny Plaintiff's motion.

# BACKGROUND

Plaintiff Lawrence Edwards, a Missouri Department of Corrections ("MODOC") inmate and participant in MODOC's Missouri Sex Offender Program ("MOSOP"), filed this complaint, pro se, on July 28, 2017. In the claims that remain, Plaintiff alleges that Defendant Les Semar, a functional unit manager at Farmington Correctional Center ("FCC"), where Plaintiff was at one point housed, intentionally delayed Plaintiff's progress in MOSOP in retaliation for Plaintiff having filed grievances against two of Semar's coworkers. Specifically, Plaintiff alleges that Semar delayed Plaintiff's entry into Phase II of MOSOP beyond the time permitted under MODOC policy—until January 29, 2018—resulting in the loss of Plaintiff's good time eligibility release date of

February 23, 2017. Plaintiff seeks damages and injunctive relief, including advancement in MOSOP and good-time credits to make him eligible for earlier release.

For the purpose of the motions before the Court, the record establishes the following.[1] Semar was a functional unit manager at FCC from 2005 until October 1, 2015. Sometime before August 6, 2015, Plaintiff sought a transfer from FCC for his own safety, due to his cooperation with police in the investigation of another FCC inmate. Plaintiff attempted to withdraw his transfer request on August 6, 2015, allegedly due to pressure or coercion by Semar. According to Plaintiff, Semar told Plaintiff that "if [he] attempted to transfer [Semar] would contact his best friend MOSOP Director Gould and make sure Plaintiff served his maximum sentence of 2024." ECF No. 139 at 28. Plaintiff alleges that his attorney assisted him in re-seeking a transfer and that Semar ultimately approved Plaintiff's transfer request on September 9, 2015.

Plaintiff filed several grievances while incarcerated at FCC and elsewhere, including grievances against officers Wendy Dashner and James Ford, whom Plaintiff alleges are friends of Semar. Plaintiff claims that Semar "threatened Plaintiff by telling

---

[1] The Court will disregard the portions of Plaintiff's summary judgment motions that discuss injuries unrelated to the claims at issue in this lawsuit. For example, Plaintiff makes various allegations regarding his risk assessment classification and whether he was improperly assigned to an "Alpha" wing for violent and aggressive inmates. ECF No. 139 at 17. Plaintiff likewise argues that he was issued conduct violations and placed in disciplinary segregation. *Id.* at 9. Any claims based on these and other allegations that were not pled in Plaintiff's complaint are not properly before this Court. *See N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004) ("[W]hile we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment.").

him it would be in his best interest to dismiss the [grievances] he had against [Semar's] two co-workers, and would give Plaintiff until that afternoon to rethink his decision." *Id.*

Semar retired from MODOC on October 1, 2015. On October 13, 2015, Plaintiff was transferred to Moberly Correctional Center ("MCC"). MCC did not offer MOSOP, and on October 13, 2015, MCC staff immediately submitted Plaintiff for transfer to Eastern Reception, Diagnostic and Correctional Center ("ERDCC"). Plaintiff's transfer to ERDCC occurred on December 8, 2015. Plaintiff began MOSOP Phase I at ERDCC on February 11, 2016.

Plaintiff alleges that after his completion of MOSOP Phase I in March 2016, he was not immediately enrolled in MOSOP Phase II. Instead, Plaintiff's enrollment in Phase II was delayed by nearly two years, until January 29, 2018. Plaintiff began MOSOP Phase II on January 29, 2018 and completed Phase II on January 28, 2019. Plaintiff alleges that, because of his delayed entry into MOSOP Phase II, he lost his GTE release date of February 23, 2017.

Plaintiff alleges that the delay in his enrollment in MOSOP Phase II was in retaliation for his grievances. Specifically, Plaintiff alleges that he "realizes that FUM Semar's threat to have MOSOP Director Gould to make plaintiff serve his maximum sentence of 2024 is actually being carried out since his 2-23-2017 GTE been took [sic]." Am. Compl. ¶ 27.

MOSOP is administered by Corizon Health, the healthcare contractor for MODOC. Semar never worked for Corizon or for MOSOP. Semar has submitted evidence, including his sworn declaration and that of MOSOP Director, Gould, that

Semar had no control over MOSOP scheduling; Semar never contacted anyone at MOSOP regarding Plaintiff or Plaintiff's participation in MOSOP; and Semar did not threaten Plaintiff. *See, e.g.*, ECF Nos. 146-23 & 146-25. In response to this evidence, Plaintiff offers his own declaration reiterating the facts stated above.[2]

## DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." "[T]he burden of demonstrating that there are no genuine issues of material fact rests on the moving party," and the court must view "the evidence and the inferences that may be reasonably drawn [therefrom] in the light most favorable to the non moving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015).

"A disputed fact is not material unless it may affect the outcome of the suit under governing law." *Hill v. St. Louis Univ.*, 123 F.3d 1114, 1118–19 (8th Cir. 1997) (citation omitted). Once the movant has met his burden, the nonmoving party may not rest on the allegations in his pleadings but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1), (e).

---

[2] Semar has moved to strike Plaintiff's declaration because it does not indicate that it was signed under penalty of perjury. ECF No. 159. Plaintiff responded to Semar's motion by supplementing, with leave of the Court, the documents he previously filed to include a new signature page signed under penalty of perjury. *See* ECF No. 162. Semar contends that the new signature page is related to Plaintiff's brief in support of summary judgment, rather than Plaintiff's declaration. The Court concludes that it need not strike the declaration because, even if the Court considers the declaration, it would not create a genuine issue of material fact for the reasons set forth below.

4

"Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A plaintiff's status as a pro se prisoner does not excuse him from responding to a defendant's motion "with specific factual support for his claims to avoid summary judgment." *Beck v. Skon,* 253 F.3d 330, 333 (8th Cir. 2001).

**First Amendment Retaliation § 1983**

The plaintiff in a § 1983 action must show that a defendant deprived him of a constitutional right while acting under color of state law. "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "A defendant will not be held liable under § 1983 unless he was personally involved in causing the deprivation of a constitutional right." *Triplett v. Azordegan*, 570 F.2d 819, 823 (8th Cir. 1978).

"To establish a First Amendment retaliation claim under 42 U.S.C. § 1983, the plaintiff must show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted).

"The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citation omitted). However, summary judgment is warranted here because the record contains

5

insufficient evidence that Semar took any adverse action against Plaintiff that would chill a person of ordinary firmness from filing grievances.

A threat of retaliation may constitute an adverse action if it would create a sufficiently chilling effect on a person of ordinary firmness. *See Burgess v. Moore*, 39 F.3d 216, 218 (8th Cir. 1994). "The ordinary-firmness test is well established in the case law, and is designed to weed out trivial matters from those deserving the time of the courts as real and substantial violations of the First Amendment." *Garcia v. City of Trenton*, 348 F.3d 726, 728 (8th Cir. 2003). Semar's alleged statement that "it would be in [Plaintiff's] best interest" to dismiss the grievances he filed against Semar's coworkers, if a threat of retaliation at all, is too vague to chill a person of ordinary firmness from filing grievances. *Cf. Santiago v. Blair,* 707 F.3d 984, 992 (8th Cir. 2013) (officer's threat that if plaintiff did not drop excessive force grievance, he would be found hanging in his cell and his death would be made to look like a suicide, was sufficient to chill a prisoner of ordinary firmness from engaging in prison grievance process).[3]

As to the primary adverse action alleged in the complaint, relating to the delay in Plaintiff's progression through MOSOP, Plaintiff has failed to present evidence that Semar was personally involved in causing the delay. Nothing in the record contradicts Semar's evidence that he had no control over MOSOP scheduling; he retired from

---

[3] Semar's alleged threat to contact Gould and "make sure Plaintiff served his maximum sentence" was, according to Plaintiff, a response to Plaintiff's request to transfer, not Plaintiff's use of the grievance process. As such, it was not causally connected to a First Amendment-protected activity.

6

MODOC years before the alleged delay; and he never contacted anyone at MOSOP regarding Plaintiff. Plaintiff's argument to the contrary rests on speculation, and Plaintiff "may not stave off summary judgment armed with only the hope that the jury might disbelieve witnesses' testimony." *See Smith v. Kilgore*, No. 18-1040, 2019 WL 2426497, at *2 (8th Cir. June 11, 2019) (citation omitted).

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment is **GRANTED**. ECF No. 145.

**IT IS FURTHER ORDERED** that Defendant's motion to strike Plaintiff's declaration is **DENIED**. ECF No. 159.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment is **DENIED**. ECF No. 139.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of June, 2019.